UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLIED TELECOM GROUP, LLC,

    *Plaintiff*,

v.

DISTRICT OF COLUMBIA,

    *Defendant*.

Civil Action No. 1:22-cv-00653 (CJN)

## MEMORANDUM OPINION

Plaintiff Allied Telecom Group, LLC, a telecommunications service provider, claims that two District of Columbia agencies have contracted with each other for telecommunications services in violation of federal regulations implementing the Telecommunications Act of 1996. The District of Columbia moves to dismiss the complaint for lack of subject-matter jurisdiction and failure to state a claim. For the reasons explained below, the Court will deny the motion.

### I. Background

This case concerns competitive-bidding requirements established by regulations implementing provisions of the Telecommunications Act that promote the provision of telecommunications and information services to entities like schools and libraries. The Court of Appeals has described the relevant statutory and regulatory scheme as follows:

> In the Telecommunications Act of 1996, Congress charged the Federal Communications Commission ("FCC") with promoting universal access to advanced telecommunications and information services at just, reasonable, and affordable rates. Telecommunications Act of 1996, Pub. L. No. 104–104 § 254, 110 Stat. 56, 71–75. Under the 1996 Act and the FCC's implementing regulations, every interstate telecommunications carrier must contribute a portion of its quarterly interstate and international telecommunications revenue to the Universal Service Fund. *See* 47 C.F.R. §§ 54.706, 54.709. . . . The FCC appointed the Universal Service Administrative Company to administer the Fund, 47 C.F.R.

1

> § 54.701(a), and to use the money to support the cost of providing low-cost telecommunications services to schools, libraries, health-care providers, low-income consumers, and subscribers in high cost-areas. *See* 47 U.S.C. § 254(b); 47 C.F.R. § 54.701(c)(1).
>
> One of the many programs administered through the Fund is the Schools and Libraries Program, commonly known as "E–Rate." *See* 47 U.S.C. § 254(h)(1)(B). The E–Rate program entitles qualifying schools and libraries to receive Internet and telephone services at discounted rates. *See generally United States v. Green*, 592 F.3d 1057, 1060–1061 (9th Cir. 2010). To receive those discounts, the schools and libraries must first conduct a "competitive bidding process" that is open to all telecommunications service providers. 47 C.F.R. § 54.503(a). . . .
>
> The schools and libraries must then select the most cost-effective service from among those bids. 47 C.F.R. § 54.511(a). Once the schools and libraries have reached an agreement with a service provider, they can submit a request for funding approval to the Universal Service Administrative Company. *Id.* § 54.504(a). Once the agreement is approved, the Company will either reimburse the school or library for its payments to the service provider, or will pay the service provider's invoices directly. *Id.* § 54.514(a) & (c).

*United States ex rel. Heath v. AT & T, Inc.*, 791 F.3d 112, 116–17 (D.C. Cir. 2015). In addition, "[s]tate telecommunications networks may secure discounts under the universal service support mechanisms . . . on behalf of eligible schools and libraries," provided that they "[c]omply with the competitive bid requirements set forth in [47 C.F.R.] § 54.503." 47 C.F.R. § 54.519(a)(6).

Allied alleges that the District of Columbia Public Schools (DCPS) has violated these rules by contracting with another D.C. agency—the Office of the Chief Technology Officer (OCTO)—for telecommunications services and by obtaining funding through the E–rate program. Compl. ¶¶ 12–13, ECF No. 1. D.C. Code § 1-301.01(k) provides that

> [t]he Mayor may authorize the heads of District departments, offices, and agencies to place orders with any other department, office, or agency of the District for materials, supplies, equipment, work, or services of any kind that the requisitioned department, office, or agency may be in a position to supply or equipped to render.

Acting under authority from this provision, Allied claims, DCPS has issued a "non-competitive, higher priced" award to OCTO "rather than awarding the work on a competitive basis to a lower

2

commercial service provider offeror such as Allied." *Id.* ¶ 16. According to the complaint, Allied provided its "wide area network and internet services" to DCPS prior to 2015, but since that year, DCPS has obtained the services from OCTO. *Id.* ¶¶ 6–7, 12. This departure allegedly stemmed from a decision by DCPS "to not contract for the E-rate telecommunications services from a commercial vendor such as Allied." *Id.* ¶ 12. Allied alleges that "OCTO provides these services to DCPS at a price in excess of the price which Allied has offered to perform these services," and that "in the most recent contracting cycle, Allied offered to perform the services at a price significantly lower" than OCTO's price. *Id.* Allied also claims that OCTO "has a relationship with DCPS that unfairly influences the outcome of any competition and furnished OCTO with inside information," all of which is improper under FCC rules. *Id.* ¶ 19; *see* 47 C.F.R. § 54.503(a).

In March 2022, Allied filed suit against the District of Columbia for declaratory and injunctive relief. Allied seeks a "declaratory judgment that federal law preempts D.C. Code Ann. § 1-301.01(k) as it applies to contracts awarded under the E-rate program," such that "DCPS has no power to continue to contract with OCTO under the E-rate program." Compl. at 7. Allied also requests an injunction "to prevent DCPS from continuing to violate Federal law." *Id.* ¶ 31. The District moves to dismiss, arguing that the Court lacks subject-matter jurisdiction and that Allied has failed to state a claim.

## II.  Legal Standards

When assessing a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the Court "assume[s] the truth of all material factual allegations in the complaint and construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quotation omitted). The Court also construes the factual allegations in a

3

complaint this way when addressing a motion to dismiss for failure to state a claim under Rule 12(b)(6). *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That requirement is met when the pleaded facts allow "the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III.  Analysis

The District's primary argument for dismissal is that Allied's claims do not fall within the Court's subject-matter jurisdiction because Allied lacks a cause of action. Even if the Court has jurisdiction, the District contends, Allied's claims should nevertheless be dismissed because Allied has failed to state a preemption claim and because the suit is time-barred. The Court addresses each argument in turn, starting with the argument that the District frames as jurisdictional.

District courts have subject-matter jurisdiction to decide federal questions—those that "aris[e] under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court generally has federal-question jurisdiction if plaintiffs' right "to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quotation omitted). That general rule applies "unless the claim clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." *Id.* (quotation omitted). As a result, "the inadequacy of the federal claim" will only support dismissal for lack of subject-matter jurisdiction "when the claim is so insubstantial, implausible, foreclosed by prior decisions of this Court, or

4

otherwise completely devoid of merit as not to involve a federal controversy." *Id.* (quotation omitted).  Otherwise, the absence of a cause of action "does not implicate subject-matter jurisdiction." *Id.*

The District's motion conflates the concepts of subject-matter jurisdiction and cause of action; only in its reply brief does it recognize these well-established rules, arguing there, in a footnote, that Allied lacks even an *arguable* cause of action (in the jurisdictional sense).  Def.'s Reply at 2 n.2, ECF No. 10.  The District does little to support its position that Allied's claims are "devoid of merit." *Steel Co.*, 523 U.S. at 89 (quotation omitted).  The Court disagrees that this question about the existence of a cause of action bears on its jurisdiction here, and it will analyze the question under the rubric of Rule 12(b)(6).  *See infra* at 6–7; *Doe v. Metro. Police Dep't*, 445 F.3d 460, 466–67 (D.C. Cir. 2006).

The Court's federal-question jurisdiction is otherwise clear:  Because Allied's claims turn on the preemptive effect of federal law—the Telecommunications Act and the FCC's implementing regulations—the case presents a federal question.  *See Verizon Md., Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 642 (2002); *D.C. Ass'n of Chartered Pub. Schs. v. District of Columbia*, 930 F.3d 487, 493–94 (D.C. Cir. 2019).  And the District's half-hearted challenge to Allied's standing, raised in a footnote in its motion, falls short.  *See* Def.'s Mem. in Support of Mot. to Dismiss ("Def.'s Mot.") at 5 n.1, ECF No. 8-1 (stating that it is "unclear at best whether plaintiff has alleged an injury redressable by this Court").  A "disappointed bidder" allegedly deprived of its "right to a legally valid procurement process . . . asserts a cognizable injury," and the bidder must show "that it is ready, willing, and able to participate in a new auction should it prevail in court." *Alvin Lou Media, Inc. v. FCC*, 571 F.3d 1, 6 (D.C. Cir. 2009) (quotations omitted).  Allied has satisfied this standard at the pleading stage, alleging that it has "proposed on

5

and sought to provide" its services to DCPS, and did provide those services, in the relatively recent past. Compl. ¶ 6. Allied alleges that DCPS has "prevented Allied from providing these services" by operating its bidding process in a non-competitive manner. *Id.* ¶ 7. Together, these allegations reasonably support the conclusion that Allied is a "ready, willing, and able" bidder. *Alvin Lou Media*, 571 F.3d at 6.

The Court also declines to dismiss based on the inadequacy of Allied's claims under the Rule 12(b)(6) standard. The District argues that no valid cause of action exists because the Declaratory Judgment Act, the Supremacy Clause, the Telecommunications Act, and the FCC regulations—all referenced in Allied's complaint—do not create a private cause of action. *See* Def.'s Mot. at 5–9. But Allied does not attempt to rely on any express or implied statutory cause of action; instead, it presses a "preemption-based claim" that "would arise under federal common law." *D.C. Ass'n of Chartered Pub. Schs.*, 930 F.3d at 493. Although the preemptive effect of federal law stems from the Constitution's Supremacy Clause, the cause of action "does not arise under the Constitution itself," but is "the creation of courts of equity." *Id.* (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015)) (internal quotation marks omitted).

At least two obstacles may bar this type of claim from proceeding beyond the pleading stage, but they do not have that effect here. First, courts of equity created "[t]he ability to sue to enjoin unconstitutional actions by state and federal *officers*," while sovereign immunity can bar similar claims brought against state *entities*. *Armstrong*, 575 U.S. at 327 (emphasis added); *see Verizon Md.*, 535 U.S. at 645 (recognizing that under *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff "may proceed against the individual commissioners in their official capacities" even absent waiver of sovereign immunity). But the District (the only named defendant) has not asserted sovereign immunity. Second, a suit "to enjoin unlawful executive action is subject to

6

express and implied statutory limitations." *D.C. Ass'n of Chartered Pub. Schs.*, 930 F.3d at 493–94 (quoting *Armstrong*, 575 U.S. at 327) (internal quotation marks omitted).  While the District argued in its motion to dismiss that no source of federal law at play here affirmatively *supplies* a federal cause of action, it did not argue that the statutory scheme "implicitly *precludes* private enforcement." *Armstrong*, 575 U.S. at 328 (emphasis added).

The District again acknowledges the latter issue for the first time in its reply brief.  And its only contention there appears to be that *Allied* has not "made any argument that it may indeed avail itself of the Court's equitable powers to bring a private enforcement action under the applicable legal regime"—with no recognition of the District's own failure to make the counterargument in its initial motion.  Def.'s Reply at 3.  The Court declines to consider this late (and very limited) argument now, absent adequate briefing from the parties.  *See, e.g.*, *Bronner v. Duggan*, 324 F.R.D. 285, 293 (D.D.C. 2018); *Benton v. Laborers' Joint Training Fund*, 121 F. Supp. 3d 41, 51 (D.D.C. 2015).

Turning to the substance of Allied's preemption-based claim, the District argues that the D.C. Code provision allowing agencies to contract with one another does not conflict with, and is not otherwise preempted by, the Telecommunications Act or its implementing regulations.  True enough, these laws alone do not "clash in a way that makes compliance with both [District] and federal law impossible," and the contracting authority provided by D.C. law does not pose an "obstacle" to the E–rate program. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 347 (D.C. Cir. 2018) (quotations omitted).  But the District appears to realize, by the time of its reply, that the core of Allied's theory of preemption challenges DCPS's exercise of authority under D.C. Code § 1-301.01(k) "as applied to authorize DCPS's contract with OCTO for E-rate services."

7

Def.'s Reply at 16; *see also Verizon Md.*, 535 U.S. at 640–48 (permitting preemption-based claim that an FCC order violated the Telecommunications Act and an FCC ruling).

The District attacks that theory only as a matter of factual sufficiency of the complaint, arguing that the complaint alleges that DCPS did not choose the bid with the lowest price, while the federal competitive-bidding requirements do not mandate that the lowest-price bid be accepted. *See* 47 C.F.R. § 54.511(a) (stating that "price should be the primary factor considered" when choosing the most "cost-effective service offering," but that "entities may consider relevant factors other than the pre-discount prices"). However, Allied alleges broadly that DCPS "avoids competitive bidding," having "determined to obtain these services" from OCTO, and more specifically that DCPS did not select Allied's bid even though it "offered to perform the services at a price significantly lower that [sic] the price OCTO is providing the services." Compl. ¶¶ 12–13. A "reasonable inference" from these factual allegations is that DCPS has violated the FCC's competitive-bidding rules. *Iqbal*, 556 U.S. at 678.

Last, the District seeks dismissal on the ground that the action is time-barred by the general three-year statute of limitations from D.C. Code § 12-301(8). *See Loumiet v. United States*, 828 F.3d 935, 947 (D.C. Cir. 2016). In the District's view, that limitations period has now passed, having started to run in 2015 when DCPS is alleged to have first granted a contract award to OCTO in violation of the competitive-bidding requirements. Allied does not suggest any alternate limitations period in the place of the three-year period that the District proposes, but it does argue that the doctrine of laches—not any statute of limitations—applies.

The Court need not decide whether the three-year statute of limitations or the doctrine of laches applies at this point, because neither would conclusively bar Allied's suit on the face of the complaint. *See Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Construing the

8

factual allegations in Allied's favor, it has alleged a series of unlawful contract awards by DCPS to OCTO *beginning* in 2015. *See* Compl. ¶ 12. For "a series of repeated violations of an identical nature," "each violation gives rise to a new cause of action" and "begins a new statute of limitations period as to that particular event." *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, 1135 (D.C. Cir. 2011) (quotation omitted). It is not clear from the complaint that each of these instances fall outside of the limitations period.

As for laches, that doctrine "involves more than the mere lapse of time and depends largely upon questions of fact." *Menominee Indian Tribe v. United States*, 614 F.3d 519, 532 (D.C. Cir. 2010) (quotation omitted). The party asserting laches must show that it has been prejudiced by an unreasonable delay. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 121–22 (2002). "A complaint seldom will disclose undisputed facts clearly establishing the defense." *Menominee*, 614 F.3d at 532 (quotation and brackets omitted). Here, not only did the District omit any mention of the doctrine of laches from its initial motion, but it also failed to make the required showing of prejudice and unreasonableness on the face of the complaint.

## IV. Conclusion

For these reasons, the District's Motion to Dismiss is **DENIED**. An order will issue contemporaneously with this opinion.

DATE: July 24, 2023

_____
CARL J. NICHOLS
United States District Judge

9