### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIED TELECOM GROUP, LLC,** | |
| **Plaintiff,** | |
| **v.** | **No. 1:22-cv-00653-CJN** |
| **DISTRICT OF COLUMBIA,** | |
| **Defendant.** | |

### DEFENDANT'S COMBINED OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................. i

INTRODUCTION ........................................................................................................................... 1

FACTS NOT IN GENUINE DISPUTE ......................................................................................... 2

PROCEDURAL HISTORY............................................................................................................. 4

STANDARD OF REVIEW ............................................................................................................. 5

ARGUMENT .................................................................................................................................. 5

    I.    Plaintiff's Preemption Claim Fails as a Matter of Law. .................................................... 5

        A.   The Telecommunicates Act Implicitly Precludes Private Enforcement. ...................... 5

        B.   Plaintiff Provides Insufficient Evidence To Support Its Preemption Claim  and Therefore Is Not Entitled to Summary Judgment. ................................................... 9

    II.   Plaintiff Failed To Avail Itself of the Procurement Appeals Process. ......................... 12

    III.  Plaintiff Seeks No Relief That Can Be Granted. ......................................................... 14

CONCLUSION.............................................................................................................................. 16

# TABLE OF AUTHORITIES

## Cases

*Abadie v. District of Columbia Contract Appeals Bd.*, 916 A.2d 913 (D.C. 2007)............ 5, 14, 15

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................. 6

*Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320 (2015) .................................... 7, 8, 9, 10

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ............................................................. 6

*D.C. Ass'n of Chtd. Publ. Sch.*, 930 F.3d 487 (D.C. Cir. 2019) .................................... 7

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990) ............................................................ 12

*Greene v. Dalton*, 164 F.3d 671 (D.C. Cir. 1999) ....................................................... 7

*Hettinga v. United States*, 560 F.3d 498 (D.C. Cir. 2009) ............................................ 15

*Hill v. FCC*, 496 Fed. App'x 396 (5th Cir. 2012) ....................................................... 8, 11

*Maldonado v. District of Columbia*, 61 F.4th 1004 (D.C. Cir. 2023) ............................ 16

*Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684 (D.C. Cir. 2015) ............... 17

*Safe Sts. All. v. Hickenlooper*, 859 F.3d 865 (10th Cir. 2017) ..................................... 10

*Sickle v. Torres Advances Enterprise Solutions, LLC*, 884 F.3d 338 (D.C. Cir. 2018) ......... 11, 12

*W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1 (D.D.C. 1997) ........................ 13

## Statutes

47 U.S.C. § 254................................................................................................ 7, 9, 17

D.C. Code § 1-301.01(k)..................................................................................... passim

D.C. Code § 2-360.08 ........................................................................................ 14, 15

D.C. Code § 2-360.03 ........................................................................................ 14

D.C. Code § 2-360.00 *et seq.*............................................................................... 14

**Other Authorities**

*In the Matter of Schools and Libraries Universal Service Support Mechanism*, 19 FCC Rcd 15808 (2004) ..................................................................................................................... 8

**Rules**

Fed. R. Civ. P. 56 ....................................................................................................................... 6

**Regulations**

27 DCMR § 199.1 ...................................................................................................................... 15

27 DCMR § 3800 et *seq.* .......................................................................................................... 14

47 C.F.R. § 54.503 .................................................................................................................... 14

47 C.F.R. § 54.504 ................................................................................................................ 8, 12

47 C.F.R. § 54.511 ................................................................................................... 9, 10, 13, 17

47 C.F.R. § 54.516 ...................................................................................................................... 8

47 C.F.R. § 54.519 ............................................................................................................... 13, 17

47 C.F.R. § 54.719 ...................................................................................................................... 8

## INTRODUCTION

The District of Columbia Public Schools participates in the federal E-rate program which provides funding for internet services to eligible schools and libraries.  In 2015, Plaintiff Allied Telecom Group, LLC and DC-Net, a program of the Office of the Chief Technology Officer (OCTO), each submitted a bid to provide services under E-rate, and DC-Net was selected as the successful bidder.  Instead of protesting the outcome of the procurement process at that time through the proper administrative channel, Plaintiff waited over seven years to bring this lawsuit, and now asks this Court, under the guise of a preemption claim, to invalidate the 2015 procurement process.  Specifically, Plaintiff argues that DCPS violated federal regulations in its selection of DC-Net as a service provider in 2015 and, as a result, the District statute that authorizes intra-agency contracts—such as the one between DCPS and OCTO here—is preempted by those federal regulations.  Plaintiff is wrong and the District is entitled to summary judgment.

First, the District is entitled to summary judgment as a matter of law because the Telecommunications Act and its implementing regulations preclude equitable private enforcement of the competitive bidding requirements of the E-rate program.  But even if that were not the case, Plaintiff is not entitled to summary judgment because it fails to demonstrate any conflict between the federal requirements of the E-rate program and District procurement law generally or the 2015 bidding process related to the E-rate program specifically.  Simply put, this is a procurement dispute that could have—and should have—been raised in the proper forum at the proper time.  It was not, and therefore it cannot be brought here and now.  Lastly, even if Plaintiff had a successful claim—it does not—Plaintiff is not entitled to any of the relief it seeks

because Plaintiff's claim is moot, and the relief it seeks is foreclosed by law.  As such, the Court should grant summary judgment for the District and deny summary judgment to Plaintiff.

**FACTS NOT IN GENUINE DISPUTE**

The Telecommunications Act and its implementing regulations provide for the creation of the universal service support program, which, in relevant part, promotes "[a]ccess to advanced telecommunications services for schools, health care, and libraries."  Def.'s Statement of Undisputed Material Facts (SUMF) ¶ 1–2 (quoting 47 U.S.C. § 254).  The school and libraries universal support program is commonly known as the E-rate program and is administered by the Universal Service Administrative Company (USAC) under the review of the Federal Communications Commission (FCC).  *Id.* ¶ 3.  Through the E-rate program, schools and libraries can receive internet and phone services at discounted rates.  *Id.* ¶ 4.

To receive funding through the E-rate program, participating schools and libraries are required to "conduct a fair and open competitive bidding process."  *Id.* ¶ 5 (quoting 47 C.F.R. § 54.503).  The school or library "shall carefully consider all bids submitted and must select the most cost-effective service offering."  *Id.* ¶ 6 (quoting 47 C.F.R. § 54.511(a)).  "In determining which service offering is most cost-effective, entities may consider relevant factors other than the pre-discount price submitted by providers, but price should be the primary factor considered."  *Id.* ¶ 7 (quoting 47 C.F.R. § 54.511(a)).  After the participating entity selects and contracts with a telecommunications service provider, it must provide USAC with information about the contract, including a funding request.  *Id.* ¶ 8.  Upon approval, USAC will either reimburse the entity for its payments to the service provider or will pay the service provider's invoices directly.  *Id.* ¶ 9.  Participants in the E-rate program are subject to audits of their compliance with the requirements of the program, *id.* ¶ 10, and failure to abide by USAC's program rules, including the

competitive bidding requirements, may result in the forfeiture of all funds disbursed through the E-rate program, *id.* ¶ 11.  Under the E-rate program, any party "aggrieved by an action taken by [USAC] . . . must first seek review" within 60 days through USAC's internal administrative process.  *Id.* ¶ 12 (quoting 47 C.F.R. §§ 54.719(a)).  A party may also challenge "prohibitive conduct on the part of a third party," with any such challenge reviewed by USAC.  *Id.* ¶ 13 (47 C.F.R. § 54.721(d)).  After a party receives a decision from USAC, a party may seek further review by the FCC within 60 days of receiving such a decision.  *Id.* ¶ 14.

The E-rate program's "competitive bid requirements apply in addition to state and local competitive bid requirements and are not intended to preempt such state or local requirements." *Id.* ¶ 15 (quoting 47 C.F.R. § 54.503(b)).  District law sets forth the local procedures for aggrieved bidders to protest any solicitation or award by a District agency through the Contract Appeals Board (CAB).  *Id.* ¶ 16.  An "aggrieved person means an actual or prospective bidder or offeror (i) whose direct economic interest would be affected by the award of a contract or by the failure to award a contract, or (ii) who is aggrieved in connection with the solicitation of a contract."  *Id.* ¶ 17 (quoting 27 DCMR § 199.1).  The CAB is the "exclusive hearing tribunal" for "any protest of a solicitation or award . . . by any actual or prospective bidder . . . who is aggrieved in connection with the solicitation or award of a contract."  *Id.* ¶ 18 (quoting D.C. Code § 2-360.03(a)(1)).  Any bid protest based on "alleged improprieties in a solicitation which are apparent prior to bid opening or the time set for receipt of initial proposals" must be filed before initial proposals are to be submitted.  *Id.* ¶ 19 (quoting D.C. Code § 2-360.08(b)(1)).  All other bid protests "shall be filed not later than 10 business days after the basis of protest is known or should have been known, whichever is earlier."  *Id.* ¶ 20 (quoting D.C. Code § 2-360.08(b)(2)).  "Bid protests are subject to strict statutory time limitations, and the [CAB] is

without jurisdiction to consider a protest that is untimely." *Abadie v. District of Columbia Contract Appeals Bd.*, 916 A.2d 913, 915 (D.C. 2007).

Prior to 2015, Plaintiff Allied Telecom Group, LLC provided telecommunications services to DCPS. *Id.* ¶ 21. In 2015, DCPS solicited bids for E-rate telecommunications services. *Id.* ¶ 22. DCPS sought bids for a one-year contract with four option years. *Id.* ¶ 23. Plaintiff and DC-Net, a program of the Office of the Chief Technology Officer (OCTO), bid on the contract. *Id.* ¶ 24. DCPS selected DC-Net to provide telecommunications services. *Id.* ¶ 25. Plaintiff did not protest this award through the CAB. *Id.* ¶ 26. DCPS and OCTO accordingly entered into a Memorandum of Understanding (MOU) for E-rate services. *Id.* ¶ 27. District of Columbia law, specifically D.C. Code § 1-301.01(k), authorizes District agencies to contract with one another for services. *Id.* ¶ 28.

In 2019, DCPS again solicited bids for E-rate telecommunications services for a one-year contract with four option years. *Id.* ¶ 29. After receiving bids, DCPS again selected DC-Net to provide telecommunications services. *Id.* ¶ 30. Plaintiff did not protest this award through the CAB. *Id.* ¶ 31.

## PROCEDURAL HISTORY

On March 9, 2022, Plaintiff filed this action against Defendant District of Columbia (the District) seeking a declaratory judgment that the Telecommunications Act of 1996 preempts the use of D.C. Code § 1-301.01(k) in the E-rate bidding process and that DCPS has no power to contract with the Office of the Chief Technology Officer (OCTO) using E-rate funds, and an order enjoining DCPS from using D.C. Code § 1-301.01(k) as a basis for an award to OCTO or continuing to contract with OCTO. *See* Compl. [1] ¶ 26. The District moved to dismiss on April 29, 2022; that motion was denied on July 24, 2023. The Parties engaged in discovery for

approximately six months, and discovery closed on May 15, 2024.  *See* March 29, 2024 Minute

Order.  On June 18, 2024, Plaintiff moved for summary judgement.  Pl.'s Mot. for Summ. J.

[26].  The District now opposes Plaintiff's motion and cross-moves for summary judgment.

**STANDARD OF REVIEW**

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also* Fed. R. Civ. P. 56(c).  To

prevail, the moving party need show only that the nonmoving party cannot "make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322; *see also* Fed. R. Civ. P.

56(c)(1)(B).  A nonmoving party, however, must establish more than a "mere existence of a

scintilla of evidence" in support of his position to avoid summary judgment.  *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 252 (1986).  The nonmoving party must present specific facts that

would allow a reasonable jury to find for that party.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C.

Cir. 1999).

**ARGUMENT**

**I.**     **Plaintiff's Preemption Claim Fails as a Matter of Law.**

**A.**     **The Telecommunicates Act Implicitly Precludes Private Enforcement.**

Plaintiff's claim rests on its contention that the "District's action [specifically, DCPS

contracting with OCTO for E-rate services] relies on District law, but violates Federal law."

Pl.'s Mem. in Support of Mot. for Summ. J. [26-1] at 1.  This claim sounds in preemption, and it

is true that preemption-based claims arise out of federal common law.  *See D.C. Ass'n of Chtd.*

5

*Publ. Sch. v. District of Columbia*, 930 F.3d 487, 493 (D.C. Cir. 2019).  However, "[t]he power of federal courts of equity to enjoin unlawful executive action is subject to express and implied statutory limits."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015).  Litigants cannot "circumvent Congress's exclusion of private enforcement" by "invoking [the Court's] equitable powers."  *Id.* at 328.  Here, the Telecommunications Act and its implementing regulations implicitly foreclose private equitable enforcement of the competitive bidding requirements because, pursuant to an express Congressional delegation and guiding principles identified by Congress, the FCC implemented the E-rate program's competitive bidding requirements and a comprehensive administrative scheme to enforce those requirements.  On this basis alone, the District is entitled to summary judgment as a matter of law.

The Telecommunications Act charged the FCC with "establish[ing] competitively neutral rules . . . to enhance, to the extent feasible and economically reasonable, access to advanced telecommunications and information services for all public and nonprofit elementary and secondary school classrooms, health care providers, and libraries."  47 U.S.C. § 254 (h)(2).  "Pursuant to this directive, the FCC established the E-rate program and adopted the competitive bidding rules as requirements for E-rate funding eligibility."  *Hill v. FCC*, 496 Fed. App'x 396, 401 n.10 (5th Cir. 2012).  As part of the implementing regulations, the FCC directed that participating schools and service providers "shall be subject to audits and other investigations to evaluate their compliance with the statutory and regulatory requirements [of the program], including those requirements pertaining to what services and products are purchased[.]"  47 C.F.R. § 54.516(c).  "Audits are a tool for the [FCC] and USAC, as directed by the [FCC], to ensure program integrity and to detect and deter waste, fraud, and abuse."  *In the Matter of Schools and Libraries Universal Service Support Mechanism*, 19 FCC Rcd 15808, ¶ 13 (2004).

If the FCC determines that a participating school failed to comply with the competitive bidding requirements, USAC or the FCC can withhold payment or seek to recover any funds already disbursed.  *See id.* ¶ 21; *Hill*, 496 Fed. App'x at 400; 47 C.F.R. § 54.504(a)(1)(vi).  A party that has been injured by a decision of USAC may challenge that decision, first by requesting a review of the decision by USAC itself and subsequently by requesting review from the FCC.  47 C.F.R. § 54.719.  After an order is issued by the FCC, an injured party can seek court review under the Administrative Procedure Act.  *See Hill*, 496 Fed. App'x at 397 (denying a petition for review of an FCC order issued in response to appellant's appeal of a USAC decision to rescind E-rate funding).  This express administrative enforcement scheme forecloses any equitable private enforcement of the competitive bidding requirements of the E-rate program.  *See Armstrong*, 575 U.S. at 328 (quoting *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001)) ("[T]he 'express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others.'").

The broad mandate to the FCC, as well the complexity of the E-rate program and the overarching universal support program, further demonstrate that private enforcement of the competitive bidding requirements of the E-rate program is foreclosed.  In *Armstrong*, the Supreme Court found that "[t]he provision for the Secretary's enforcement [of the Medicaid Act] by withholding funds might not, *by itself*, preclude the availability of equitable relief," but it did so when combined "with the judicially unadministrable nature of" the relevant provision of the Medicaid Act.  575 U.S. at 328.  The provision was judicially unadministrable because of its broad, unspecific mandate and the complexity of enforcing it.  *Id.* at 328–29.  "Explicitly conferring enforcement of this judgment-laden standard upon the Secretary alone establishes . . .

that Congress 'wanted to make the agency remedy that it provided exclusive[.]'" *Id.* (quoting

*Gonzaga Univ. v. Doe*, 536 U.S. 273, 292 (2002) (Breyer, J., concurring in judgment)).

Similar analysis applies here.  Congress delegated to the FCC the establishment of

"competitively neutral rules" "to enhance, to the extent technically feasible and economically

reasonable, access to advanced telecommunications and information services for all public and

nonprofit elementary and secondary school classrooms, health care providers, and libraries."  *See*

47 U.S.C. § 254(h)(2); *see also id.* § 254(b) (laying out broad principles the FCC should follow

in setting policies for the preservation and advancement of universal service).  Congress'

directive to establish "competitively neutral rules" within technological and economic constraints

is a broad mandate that explicitly recognizes that the FCC will need to use its discretion and

judgment in creating the implementing regulations and the competitive bidding requirements.  In

carrying out this charge, the FCC created the E-rate bidding requirements, including the mandate

that participating entities choose the "most cost-effective service offering."  47 C.F.R. § 54.511.

The "most cost-effective service" may be determined based on "relevant factors other than the

pre-discount price submitted by providers, but price should be the primary factor considered."

*Id.*  Given this standard and the broad, undefined nature of other "relevant factors," determining

whether a bidding process complied with the requirements is inherently judgment-laden.  If

parallel enforcement of the competitive bidding requirements of the E-rate program occurred

through the USAC and FCC auditing process as well as the courts, there would be the "risk of

inconsistent interpretations and misincentives that can arise out of an occasional inappropriate

application of the statute in a private action."  *Armstrong*, 575 U.S. at 329 (quoting *Gonzaga

Univ.*, 536 U.S. at 292).  If, for example, a reviewing court and the FCC made different

determinations about what were appropriate "relevant factors," it would cause confusion and

uncertainty for participating entities.  Given Congress's delegation to the FCC of the creation of

the E-rate program, the FCC's enforcement scheme, and the associated judgment-laden

standards, private equitable enforcement of the E-rate regulations is foreclosed.

Regardless, Plaintiff has not identified any substantive federal right that it is seeking to

enforce by bringing this lawsuit.  "[A] plaintiff asserting a cause of action to enforce a federal

statute must have 'a federal right that [he or she] possesses against' the defendant."  *Safe Sts. All.*

*v. Hickenlooper*, 859 F.3d 865, 902 (10th Cir. 2017) (quoting *Va. Officer for Prot. & Advocacy*

*v. Stewart*, 563 U.S. 247, 260 (2011)).  "[T]his threshold inquiry into whether the plaintiff has a

substantive right in the federal statute she or he seeks to enforce transcends the division between

law and equity."  *Id.*  For example, in *Armstrong*, the plaintiffs were providers of habilitation

services who contended that Idaho was reimbursing them at lower rate than required by

Section 30(A) of the Medicaid Act.  575 U.S. at 320.  Thus, the plaintiffs were attempting to

"vindicate their averred *federal property rights* to those funds, rights allegedly bestowed on them

*by § 30(A)*."  *Safe Sts. All.*, 859 F.3d at 899 (emphasis in original).  The FCC adopted the

competitive bidding rules at issue "to ensure eligible schools and libraries would be informed of

all available choices for services and prices would remain as low as possible, allowing for greater

participation rates among eligible schools and libraries, given the limited availability of funds,"

*Hill*, 496 Fed. App'x at 398, not for the benefit of services providers.  Plaintiff has not identified

any federal right created by the Telecommunications Act or its implementing regulations that

Plaintiff has against the District and, accordingly, the District is entitled to summary judgment.

### B.     <u>Plaintiff Provides Insufficient Evidence To Support Its Preemption Claim and Therefore Is Not Entitled to Summary Judgment.</u>

In its motion for summary judgment, Plaintiff argues that it is entitled to summary

judgment based on two theories of preemption: express preemption and conflict preemption.  *See*

Pl.'s Mem. at 7–8.  Plaintiff is wrong on the facts and the law.  Express preemption occurs when an express statement of Congress preempts a state or local law.  *See Sickle v. Torres Advances Enterprise Solutions, LLC*, 884 F.3d 338, 346 (D.C. Cir. 2018).  Plaintiff does not explain its theory of express preemption outside of a citation to the Telecommunications Act and a broad assertion that a state may not pass state regulations inconsistent with the Act.  *See* Pl.'s Mem. at 7.  That may be true, but even Plaintiff concedes the Telecommunications Act explicitly provides that a state "may adopt regulations *not* inconsistent with the Commission's rules to preserve and advance universal service" and that a state may adopt regulations that "do not rely on or burden Federal universal service support mechanisms."  *Id.* (quoting 47 U.S.C. § 254(f)) (emphasis added).  On its face, D.C. Code § 1-301.01(k) fits that bill.  The provision is not inconsistent with FCC rules and does not burden the universal service support mechanisms; it is simply a grant of authority to allow District agencies to contract with each other.  And nothing in the provision precludes its use after a competitive bidding process, so there is no express preemption.

Plaintiff's conflict preemption argument is similarly deficient.  Conflict preemption exists whenever a federal law and a state law "clash in a way that makes compliance with both state and federal law impossible, or when state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Sickle*, 884 F.3d at 347 (alteration adopted) (citation and internal quotation marks omitted).  As this Court recognized in its opinion denying the District's motion to dismiss, D.C. Code § 1-301.01(k) and the Telecommunications Act and its implementing regulations "do not 'clash in a way that makes compliance with both [District] and federal law impossible,' and the contracting authority provided by D.C. law does not pose an 'obstacle' to the E-rate program."  Mem. Op. [14] at 7 (quoting *Sickle*, 884 F.3d at 347).  So, to the extent Plaintiff contends that D.C. Code § 1-301.01(k) is preempted because,

under certain circumstances, it would allow DCPS to contract with OCTO in a manner that the Telecommunications Act would not permit but also allows contracting that complies with the Act, *see* Pl.'s Mem. at 8, that is insufficient to succeed on a preemption claim because there is no conflict.  "[S]tate law is pre-empted to the extent that it actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

Plaintiff's only remaining contention is that D.C. Code § 1-301.01(k) is preempted because federal law "precludes the award of a contract for the [E-rate] services to OCTO, which is not the lowest price and moreover has a relationship with DCPS that unfairly influences the outcome of any competition."  Pl.'s Mem. at 7.  But federal law does not require the District to select the lowest bidder.  To be sure, the regulations require that the most "cost-effective bid" be selected and, in that evaluation, price should be the primary factor.  47 C.F.R. § 54.504(a)(1)(ix); *see also* 47 C.F.R. § 54.511.  But not the only factor.[1]  Plaintiff does not even attempt to address the actual requirements of the regulation—that the most cost-effective bid be selected.  And Plaintiff's bare contention that OCTO's relationship with DCPS "unfairly influences the outcome of any competition" may have been sufficient to survive a motion to dismiss, *see* Mem. Op. at 8 (denying motion to dismiss based on "reasonable inferences"), but is insufficient to meet Plaintiff's burden at summary judgment.  Pl.'s Mem. at 7.  Even assuming that Plaintiff is referring to the fact that DCPS and OCTO are both District agencies, that relationship alone is not enough.  The E-rate regulations specifically allow state government entities to bid to provide

---

[1]    For example, in guidance provided on USAC's website, USAC identifies "prior experience including past performance," "personnel qualifications including technical excellence," "management capability including scheduling compliance," and "environmental objectives" as other relevant evaluation factors that a participating entity may include in its bid evaluation matrix.  *See* How to Construct an Evaluation, *Universal Service Administrative Co.*, https://www.usac.org/e-rate/applicant-process/selecting-service-providers/how-to-construct-an-evaluation/ (last accessed July 11, 2024).

E-rate services.  *See* 47 C.F.R. § 54.519(a)(6).  Accordingly, Plaintiff has failed to demonstrate

that it is entitled to judgment as a matter of law, its motion for summary judgment should be

denied, and summary judgment should be granted for the District.  *Cf. W.C. & A.N. Miller Cos.*

*v. United States*, 173 F.R.D. 1, 3–4 (D.D.C. 1997) (finding that a court can grant summary

judgment sua sponte to a party opposing summary judgment when the moving party "had the

opportunity to demonstrate that there was a genuine material issue and its opponent was not

entitled to judgment as a matter of law" and failed to do so).

## II.   Plaintiff Failed To Avail Itself of the Procurement Appeals Process.

In bringing this suit, Plaintiff in effect attempts to bring a bid protest under the guise of a

preemption claim—several years too late and in the wrong forum.  *See* Pl.'s Mem. at 7 ("The

District used D.C. Code Ann. § 1-301.01(k) to justify a non-competitive, higher priced, award of

work to OCTO rather than awarding the work on a competitive basis' and this statute conflicts

directly with Federal law …."); *see also* Pl.'s Statement of Undisputed Material Facts (Pl.'s

SUMF) [26-8] ¶ 3 (DCPS and OCTO entered into the original MOU after what DCPS advertised

as a competitive procurement in which Plaintiff Allied Telecom participated. Allied's proposal

for the 2015 award was approximately 2% lower than OCTO's proposal. Nevertheless, DCPS

purchased the services from OCTO, its sister agency, under the MOU.").  To begin, Plaintiff

only asserts facts related to the 2015 procurement process.  *See generally* Pl.'s SUMF.  And if

Plaintiff disagreed with the outcome of that process, the proper mechanism to dispute DCPS's

selection of a service provider was through a bid protest at the Contract Appeals Board (CAB) or

through USAC at the appropriate time.  Not in this Court, and not now.

The Telecommunications Act and its implementing regulations expressly acknowledge

that its "competitive bid requirements apply in addition to state and local competitive bid

requirements and are not intended to preempt such state and local requirements."  47 C.F.R. §

54.503(b).  Under District procurement law, any aggrieved bidder can protest any solicitation or

award allotted by a District agency through the CAB.  D.C. Code §§ 2-360.00–.08; 27 DCMR §§

3800–3803.  All procurement-related protests must be filed with the CAB, which is the

"exclusive hearing tribunal" for "any protest of a solicitation or award . . . by any actual or

prospective bidder . . . who is aggrieved in connection with the solicitation or award of a

contract."  D.C. Code § 2-360.03(a)(1).  "Bid protests are subject to strict statutory time

limitations, and the Board is without jurisdiction to consider a protest that is untimely."  *Abadie*,

916 A.2d at 915.  Any bid protest based on "alleged improprieties in a solicitation which are

apparent prior to bid opening or the time set for receipt of initial proposals" must be filed before

initial proposals are to be submitted.  D.C. Code § 2-360.08(b)(1).  All other bid protests "shall

be filed not later than 10 business days after the basis of protest is known or should have been

known, whichever is earlier."  D.C. Code § 2-360.08(b)(2).

Here, under District procurement law, Plaintiff was an "aggrieved person" in the 2015

bidding cycle.  *See* 27 DCMR § 199.1.  However, Plaintiff did not protest the bid awarded by

DCPS to OCTO in 2015—or 2019, for that matter.  SUMF ¶¶ 26, 31.  If Plaintiff wished to

challenge the propriety of DCPS' bidding process for E-rate services, it had a local forum to do

so.  It cannot now ask this Court for the same relief that was available through the administrative

process.  *See Hettinga v. United States*, 560 F.3d 498, 502–03 (D.C. Cir. 2009) (citing *McCarthy

v. Madigan*, 503 U.S. 140, 144-45 (1992)) (recognizing that parties "have long been required to

exhaust administrative remedies before seeking relief from federal courts, either as a matter of

congressional command or to protect the authority of the agency and to promote judicial

efficiency").  By failing to protest the award with the CAB, Plaintiff forfeited any challenge to

DCPS' bidding processes in 2015 (and 2019) under District of Columbia procurement law.  *See*

*Abadie*, 916 A.2d at 919 (finding that, by law, bid "protests are subject to strict time limits").

Plaintiff's claim thus fails as a matter of law.

### III.    Plaintiff Seeks No Relief That Can Be Granted.

Even if this Court were to find that Plaintiff had a viable preemption claim—it does

not—Plaintiff has not shown that it is entitled to any of the relief sought.  As a preliminary

matter, Plaintiff's motion for summary judgment does not specify the relief it seeks.  *See*

Proposed Order [26-9].  In the Complaint, however, Plaintiff seeks: (1) a "declaratory judgment

that federal law preempts D.C. Code Ann. § 1-301.01(k) as it applies to contracts awarded under

the E-rate program, and DCPS has no power to continue to contract with OCTO under the E-rate

program;" (2) an "order preliminarily and permanently enjoining DCPS from using D.C. Code

Ann. § 1-301.01(k) as a basis for an award to OCTO under the E-rate program, or continuing to

contract with OCTO under the E-rate program, and further, requiring DCPS to terminate its

current contract with OCTO under the E-rate program;" and (3) an "order granting such other

and further relief as may be provided by law or as the Court may deem equitable."  Compl. at 7.

Even if Plaintiff were successful on its preemption claim, it is not entitled to any of this relief.

To the extent Plaintiff seeks relief related to the bidding process in 2015, that claim is

moot.  Plaintiff only presents facts about the 2015 contract bidding process in its motion for

summary judgment.  *See* Pl.'s Mem. at 2; Pl.'s SUMF.  Plaintiff contends that the MOU between

DCPS and OCTO has been "amended or updated periodically" since 2015, but this misrepresents

the facts.  Pl.'s Mem. at 2 (citing Pl.'s Exs. 1–5).  DCPS solicited bids for telecommunications

service providers in 2015, selected OCTO/DC-Net as the successful bidder, and entered an MOU

with OCTO for a one year contract with four option years.  SUMF ¶¶ 22–23, 27.  Then, in 2019,

DCPS again solicited bids, again selected OCTO/DC-Net, and subsequently entered into a *new* MOU with OCTO in 2019.  *See* Pl.'s Ex. 4 at 9 ("The Seller Agency shall provide services as described herein and in its Response to the DCPS 2019 E-rate Form 470/RFP . . . .").  In other words, the last option year of the contract awarded after the 2015 bidding process—the only one Plaintiff provides any factual basis to challenge—ended in 2019, making any relief Plaintiff seeks concerning that contract moot.  *See Maldonado v. District of Columbia*, 61 F.4th 1004, 1006 (D.C. Cir. 2023) ("A case becomes moot when the court 'can grant no meaningful relief.'" (quoting *McBryde v. Committee to Review Circuit Council Conduct*, 264 F.4th 52, 55 (D.C. Cir. 2001))).

Nor is Plaintiff entitled to any of the declaratory relief it seeks concerning D.C. Code § 1-301.01(k).  As discussed above, D.C. Code § 1-301.01(k) simply grants authority to the Mayor to "authorize the heads of District departments, offices, and agencies to place orders with any other department, office, or agency of the District for materials, supplies, equipment, work, or services of any kind that the requisitioned department, office, or agency may be in a position to supply or equipped to render[.]"  As this Court has recognized, D.C. Code § 1-301.01(k) and the Telecommunications Act and its implementing regulations do not "'clash in a way what makes compliance with both [District] and federal law impossible,' and the contracting authority provided by D.C. law does not pose an 'obstacle' to the E-rate program."  Mem. Op. at 7 (quoting *Sickle*, 884 F.3d at 347).  In fact, the E-rate regulations specifically contemplate and allow state telecommunications networks to provide services in the E-rate program.  47 C.F.R. § 54.519(a)(6).  Accordingly, Plaintiff is not entitled to a declaratory judgment that D.C. Code § 1-301.01(k) is preempted as it applies to future contracts and bidding processes.

Lastly, Plaintiff is not entitled to any permanent injunctive relief.  Even if the Court finds that Plaintiff has suffered an irreparable injury and that remedies available at law are inadequate—it has not, and they are not—Plaintiff must also show that "a remedy in equity is warranted" and "the public interest would not be disserved by a permanent injunction."  *Morgan Drexen, Inc. v. Consumer Fin. Prot. Bureau*, 785 F.3d 684, 694 (D.C. Cir. 2015) (internal quotation omitted).  "Failing to satisfy any factor is grounds for denying relief."  *Id.*  Plaintiff has not, and could not, make such a showing.  Perhaps tellingly, Plaintiff did not even attempt to address either of these factors in its motion for summary judgment.  *See generally* Pl.'s Mem.  The fact is, the E-rate regulations direct that a participating entity must choose the most cost-effective bid, 47 C.F.R. § 54.511(a), and expressly contemplate state telecommunications networks bidding on E-rate services, *id.* § 54.519(a)(6).  The relief Plaintiff seeks would permanently prevent DCPS from contracting with OCTO, or any other agency in the future, for E-rate services, even when OCTO offers the most cost-effective services.  Permanently (and improperly) limiting the entities that can compete for E-rate services is not in the public interest as it would cut against the competitive bidding requirements of the E-rate program which seek to promote cost-savings and quality, and to ensure funds are available to serve as many schools and libraries as possible.  Accordingly, Plaintiff is not entitled to any of the relief that it seeks.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment to the District, and deny Plaintiff's motion for summary judgment.

Dated: July 11, 2024.                                    Respectfully submitted,

                                                         BRIAN L. SCHWALB
                                                         Attorney General for the District of Columbia

                                                         STEPHANIE E. LITOS

Deputy Attorney General
Civil Litigation Division

*/s/ Matthew R. Blecher*
MATTHEW R. BLECHER [1012957]
Chief, Civil Litigation Division, Equity Section

*/s/ Honey Morton*
HONEY MORTON [1019878]
Assistant Chief, Equity Section

*/s/ Helen M. Rave*
HELEN M. RAVE [90003876]
DAVID WASSERSTEIN [1736006]
Assistant Attorneys General
Civil Litigation Division
400 6th Street, NW
Washington, D.C. 20001
(202) 735-7620
helen.rave@dc.gov

*Counsel for Defendant District of Columbia*

17